UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SURF THRU, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>CHARWASH, LLC, and KENNETH CHARLES,<br><br>   Defendant. | Civil Action No. 2:25-cv-3100<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT**

Plaintiff Surf Thru, Inc. ("Plaintiff"), by and through its undersigned counsel, hereby alleges the following for its Complaint against Charwash, LLC ("Charwash"), and Kenneth Charles ("Mr. Charles") (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

1. This is an action for willful trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and common law trademark infringement and unfair competition, arising from Defendants' unauthorized use of Plaintiff's valuable SURF THRU, SURF THRU EXPRESS, and CATCH THE WAVE trademarks in connection with competing carwash services, which has caused and will continue to cause Plaintiff irreparable harm if not enjoined by this Court.

**THE PARTIES**

2. Plaintiff is a California corporation, having a principal place of business at 11837 Bolthouse Dr. #400, Bakersfield, CA 93311.

1

3. Upon information and belief, Charwash is a Pennsylvania limited liability company, having a principal place of business at 1161 Chickasaw Circle, Warrington, PA 18976.

4. Upon information and belief, Mr. Charles is an individual domiciled in the Commonwealth of Pennsylvania. Upon further information and belief, Ms. Charles is the principal and owner of Charwash.

## JURISDICTION AND VENUE

5. This is a civil action brought under the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, subject matter jurisdiction being conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Plaintiff's common law claims are joined and related pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

6. This Court has personal jurisdiction over Defendants because Charwash is a Pennsylvania entity, and Mr. Charles is a resident of the Commonwealth of Pennsylvania. Furthermore, Defendants have purposely availed themselves of, and purposefully directed their actions to, the Commonwealth of Pennsylvania by conducting business in the Commonwealth, including by utilizing the infringing trademarks at issue in this dispute.

7. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c), as Defendants are subject to personal jurisdiction in this Judicial District and Defendants conduct business in this Judicial District, including the wrongful acts of unfair competition and trademark infringement at issue in this litigation.

## BACKGROUND

8. Plaintiff, founded in 2011, is an eco-friendly, high-end carwash company which offers express, environmentally conscious carwash services from its 39 currently operative

locations throughout California, Washington, Oregon, Nevada, Texas, and Arizona. Plaintiff is in the process of opening 24 new carwash locations in Arizona, California, Nevada, Oregon, and Washington, and it has plans to open additional locations throughout the United States, including but not limited to in the Commonwealth of Pennsylvania, in the next few years.

9. Plaintiff is open for business 7 days a week and prides itself on providing high-quality yet affordable carwash services for personal vehicles and business vehicles, including large trucks, in as little as 5 minutes. To do so, Plaintiff employs gentle yet effective equipment and top-of-the-line washes and protectorants, which set it apart from its competitors in the industry.

### I. The Valuable Surf Thru Intellectual Property

10. Since its formation in 2011, Plaintiff has consistently promoted and provided its carwash services in all locations under the service mark SURF THRU. Plaintiff holds an incontestable federal trademark registration for the standard character mark SURF THRU in connection with "Automobile polishing; Automobile washing; Car washing" in International Class 37 (U.S. Trademark Reg. No. 4,396,127). A true and correct copy of Plaintiff's federal registration certificate for SURF THRU is attached hereto as **Exhibit "A."** As a result of its long-term continual use in commerce in connection with carwash services, Plaintiff also holds extensive common law rights in the mark SURF THRU, as well as the mark SURF THRU EXPRESS, which it has used regularly in connection with its services since 2011.

11. In addition, since its formation in 2011, Plaintiff has consistently promoted and provided its carwash services in all locations in connection with the service mark CATCH THE WAVE. Plaintiff holds an incontestable federal trademark registration for the standard character mark CATCH THE WAVE in connection with "Automobile polishing; Automobile

washing; Car washing" in International Class 37 (U.S. Trademark Reg. No. 4,396,128). A true and correct copy of Plaintiff's federal registration certificate for CATCH THE WAVE is attached hereto as **Exhibit "B."** As a result of its long-term continual use in commerce in connection with carwash services, Plaintiff also holds extensive common law rights in the mark CATCH THE WAVE.

12. The marks SURF THRU, SURF THRU EXPRESS, and CATCH THE WAVE are suggestive and inherently distinctive when used in connection with carwash services. Indeed, given their highly distinctive nature, the marks SURF THRU, SURF THRU EXPRESS, and CATCH THE WAVE have served as strong, incredibly valuable indicators of source (i.e., Plaintiff) since Plaintiff began doing business in 2011. Plaintiff's registered and common-law rights associated with its SURF THRU, SURF THRU EXPRESS, and CATCH THE WAVE trademarks are referred to collectively herein as the "Surf Thru Intellectual Property."

13. Plaintiff exercises significant quality control over the use of the Surf Thru Intellectual Property, and it polices the use of its marks closely.

14. Through the years, Plaintiff has invested significant time, energy, and monetary resources in marketing efforts to promote its services connection with the Surf Thru Intellectual Property. For example, Plaintiff has engaged in numerous marketing and promotional campaigns online, including but not limited to on social media pages such as Instagram and Facebook, as well as in the creation and dissemination of hardcopy flyers, handouts, and even a 10' x 10' pop-up tent featuring the Surf Thru Intellectual Property. Examples of Plaintiff's marketing efforts are attached hereto as **Exhibit "C."** Plaintiff has spent in excess of $5 million on these efforts.

15. Since 2011, Plaintiff has provided carwash services in connection with the Surf Thru Intellectual Property to roughly 50 million customers, and its gross revenue has exceeded $500 million. Plaintiff has received countless positive customer reviews as a result of its high-quality, eco-friendly service offerings.

16. Plaintiff's continuous exclusive use of the Surf Thru Intellectual Property in connection with its high-quality services over the past fourteen years has served to further strengthen in the minds of the public the connection between the Surf Thru Intellectual Property and Plaintiff's services and has thus led to the development of significant goodwill.

17. The Surf Thru Intellectual Property is valid and protectable under the trademark and unfair competition laws of the United States and the common law of Pennsylvania.

**II.    Defendants' Willful Infringement Of The Valuable Surf Thru Intellectual Property**

18. Defendant Charwash is a direct competitor of Plaintiff, offering similarly priced carwash services to the same general demographic of customers looking to wash their personal and/or business vehicles. As stated above, on information and belief, Mr. Charles is the principal and owner of Charwash.

19. Given Charwash's status as a direct competitor, Plaintiff was surprised to learn that at some point in the last 6 months, Defendants opened or otherwise rebranded a car wash facility in Willow Grove, Pennsylvania, under the identical business name "Surf Thru." Defendants also prominently utilized the following terms and slogans as part of their advertising, branding, and signage:

- "Surf Thru Car Wash"
- "Surf Thru Express"
- "Surf Thru Express Car Wash"

5

• "Ride the Wave"

Defendants' use of "Surf Thru," "Surf Thru Car Wash," "Surf Thru Express," "Surf Thru Express Car Wash," "Ride the Wave," and "Surf-X" (addressed below) are referred to collectively herein as "Defendants' Infringing Marks." A true and correct photograph of the signage upon Defendants' carwash as of March 10, 2025, is attached hereto as **Exhibit "D."**

20. On information and belief, Mr. Charles had been long-aware of Plaintiff's services and the valuable Surf Thru Intellectual Property, and, by adopting Defendants' Infringing Marks in connection with the directly competing business—which are confusingly similar in terms of sight, sound, meaning, and commercial impression with Plaintiff's SURF THRU, SURF THRU EXPRESS, and CATCH THE WAVE marks—Defendants clearly intended to freeride off of Plaintiff's hard-earned goodwill.

21. Indeed, the only reason that Plaintiff found out about Defendants' confusingly similar branding was that a representative of Plaintiff was asked by an attendee at a national car wash convention if Plaintiff had a connection to the competing carwash opened or rebranded by Defendants in Willow Grove, Pennsylvania—as the attendee assumed that such a connection existed given the overlapping business names. This constitutes actual marketplace confusion.

22. Deeply concerned about the potential for additional consumer confusion and associated harm to its valuable brand, Plaintiff's attorneys sent a letter to Defendants on April 28, 2025, demanding that Defendants cease and desist from unauthorized use of the Surf Thru Intellectual Property and confusingly similar versions thereof in connection with confusingly similar services. Plaintiff specifically demanded that Defendants remove and destroy all signage, promotional materials, and advertisements displaying its Surf Thru Intellectual Property and confusingly similar versions thereof, including but not limited to Defendants'

Infringing Marks. A true and correct copy of Plaintiff's April 28, 2025 cease and desist letter is attached hereto as **Exhibit "E."**

23. Throughout May and early June 2025, Mr. Charles corresponded with Plaintiff's counsel via email, ultimately agreeing to stop using the term "Surf Thru" in connection with carwash services but insisting that he would instead operate his company as "Surf-X."

24. While counsel for Plaintiff explained to Mr. Charles numerous times that "Surf-X" is a confusingly similar, infringing derivation of Plaintiff's marks SURF THRU and SURF THRU EXPRESS—as the overlapping term "SURF" is the most salient portion of Plaintiff's very strong, incontestable SURF THRU mark, and the "x" is identical in sound and meaning to the term "express" in Plaintiff's SURF THRU EXPRESS mark—Mr. Charles has steadfastly refused to remove "Surf" from his business name and advertising, which still prominently features the mark "Surf-X." True and correct snapshots of Defendants' current website and FaceBook page, on which its company is primarily advertised as "Surf-X Car Wash" with several lingering references to "Surf Thru," are attached hereto as **Exhibit "F."**

25. Defendants' branding and marketing efforts are, without question, the product of intentional copying of the Surf Thru Intellectual Property, undertaken with the transparent goal of freeriding on and exploiting the hard-earned goodwill associated therewith.

26. Actual confusion has already taken place. If Defendants are permitted to continue using confusingly similar versions of the Surf Thru Intellectual Property, including but not limited to Defendants' Infringing Marks, in commerce in connection with directly competing services—which Defendants offer to an identical customer base in a geographic region to which Plaintiff intends to expand—there can be no question that additional actual confusion will ensue.

27. Indeed, customers of carwash services do not generally exercise a high degree of care, research, and/or analysis in selecting such services. Defendants' conduct has already caused—and is certain to continue to cause—significant confusion and mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services. Persons, including actual and prospective carwash customers, familiar with the Surf Thru Intellectual Property would be likely to mistakenly believe that Defendants' services were introduced by, under the sponsorship of, or in affiliation with Plaintiff.

28. Again, if Defendants are permitted to continue to utilize confusingly similar versions of the Surf Thru Intellectual Property, including but not limited to Defendants' Infringing Marks, in connection with directly competing services, Plaintiff will be prevented from being able to control the reputation and goodwill associated with its own services.

29. Needless to say, Defendants' determination to continue using confusingly similar versions of the Surf Thru Intellectual Property after receiving explicit notice of infringement from Plaintiff's counsel demonstrates a continuing malicious and bad-faith intent to confuse the public and to profit from Plaintiff's goodwill, thereby injuring Plaintiff in a manner in which money damages cannot fully redress. Indeed, Plaintiff has been and will continue to be significantly and irreparably harmed by Defendants' parasitic acts in the absence of injunctive relief from the Court.

30. Plaintiff is also entitled to significant monetary damages resulting from Defendants' willful misconduct in connection with Plaintiff's valuable intellectual property rights.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER § 32(1) OF THE LANHAM ACT
## (15 U.S.C. § 1114(1))

31. Plaintiff repeats and re-alleges each and every allegation of Paragraphs 1 through 30 as though fully set forth herein.

32. Plaintiff is the owner of the valid and protectable SURF THRU mark and CATCH THE WAVE mark, which are inherently distinctive and have acquired significant additional secondary meaning through Plaintiff's extensive marketing and advertising efforts and its continuous use in interstate commerce in connection with carwash services since 2011.

33. Plaintiff owns valid, incontestable federal trademark registrations on the United States Patent and Trademark Office's Principal Register for its SURF THRU mark and CATCH THE WAVE mark. *See* Exs. A and B hereto.

34. Members of the consuming public associate the Surf Thru Intellectual Property with a single source—that is, Plaintiff. Specifically, the Surf Thru Intellectual is associated in the minds of the public Plaintiff and its high-quality services. Plaintiff owns valuable goodwill symbolized by and embodied in its Surf Thru Intellectual Property.

35. Plaintiff's rights in its Surf Thru Intellectual Property, which it has continuously used in interstate commerce in connection with carwash services since 2011, significantly predate Defendants' first use of Defendants' Infringing Marks.

36. Charwash is Plaintiff's direct competitor, and it offers the same type of services to the exact same demographic of customers in a geographic region to which Plaintiff intends to expand in the near future.

37. As discussed above, Defendants' Infringing Marks are very similar to the Surf Thru Intellectual Property in terms of sight, sound, meaning, and commercial impression. In

particular, Defendants' current use of "Surf-X" for a brand name overlaps directly with the first, dominant word in Plaintiff's incontestable SURF THRU mark.

38. Given the undeniable overlap, there can be no doubt that Defendants' marketing efforts are the product of intentional copying of the Surf Thru Intellectual Property, with the transparent goal of freeriding on and exploiting the hard-earned goodwill associated therewith.

39. Actual confusion has already occurred, and, if Defendants are permitted to continue using confusingly similar versions of the Surf Thru Intellectual Property, including but not limited to Defendants' Infringing Marks, in commerce in connection with directly competing services, there can be no question that additional actual confusion will ensue.

40. Indeed, Defendants' use of the Defendants' Infringing Marks—which constitutes, *inter alia*, trademark infringement in violation of 15 U.S.C. § 1114—is certain to cause confusion, cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services. Persons including actual and prospective customers familiar with the Surf Thru Intellectual Property would be likely to mistakenly believe that Defendants' services were introduced by, under the sponsorship of, or in affiliation with Plaintiff.

41. Furthermore, Plaintiff has experienced and will continue to experience loss of control of its reputation, loss of trade, and/or loss of goodwill, as well as its actual and prospective customers, who will not be able to determine from whom they are obtaining (or meant to obtain) services.

41. Again, it is obvious from the close overlap of the Surf Thru Intellectual Property and Defendants' Infringing Marks, and the fact that Defendants have refused to cease use of confusingly similar versions of the Surf Thru Intellectual Property despite receiving a cease and

desist letter from Plaintiff, that Defendants' infringing activities have been willful and wanton, and in reckless disregard of Plaintiff's exclusive intellectual property rights.

42. Plaintiff has been and will be significantly and irreparably injured unless Defendants are restrained from promoting competing services under Defendants' Infringing Marks or any other marks confusingly similar to the Surf Thru Intellectual Property. Indeed, Plaintiff is without adequate remedy at law.

43. As a result of Defendants' willful and malicious conduct, Plaintiff is also entitled to attorney's fees and expenses incurred in pursuing this action.

WHEREFORE, Plaintiff demands injunctive relief against Defendants and their affiliates including subsidiaries, parents, officers, directors, agents, owners, employees, representatives, and attorneys and all others acting under, or in concert with them or any of them, and judgment against Defendants, together with damages, interest, costs, attorney's fees, and whatever further relief this Court deems just.

## COUNT II
## UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT
## (15 U.S.C. § 1125(a))

44. Plaintiff repeats and re-alleges each and every allegation of Paragraphs 1 through 30 as though fully set forth herein.

45. Plaintiff is the owner of the valid and protectable SURF THRU mark, SURF THRU EXPRESS mark, and CATCH THE WAVE mark, which are inherently distinctive and have acquired significant additional secondary meaning through Plaintiff's extensive marketing and advertising efforts and the continuous exclusive use by Plaintiff in interstate commerce since 2011.

46. Indeed, as a result of its long-term continual use in commerce in connection with carwash services, Plaintiff holds extensive common law rights in the SURF THRU mark, SURF THRU EXPRESS mark, and CATCH THE WAVE mark.

47. Members of the consuming public associate the Surf Thru Intellectual Property with a single source—that is, Plaintiff. Specifically, the Surf Thru Intellectual is associated in the minds of the public Plaintiff and its high-quality services. Plaintiff owns valuable goodwill symbolized by and embodied in its Surf Thru Intellectual Property.

48. Plaintiff's rights in its Surf Thru Intellectual Property, which it has continuously used in interstate commerce since 2011, significantly predate Defendants' first use of Defendants' Infringing Marks.

49. Charwash is Plaintiff's direct competitor and it offers the same type of services to the exact same demographic of customers in a geographic region to which Plaintiff intends to expand.

50. As discussed above, Defendants' Infringing Marks are very similar to the Surf Thru Intellectual Property in terms of sight, sound, meaning, and commercial impression. In particular, Defendants' use of "Surf-X" as a brand name overlaps directly with the first, dominant word in Plaintiff's valuable SURF THRU mark and SURF THRU EXPRESS mark, as well as the term "express" in Plaintiff's SURF THRU EXPRESS mark.

51. Given the undeniable overlap, there can be no doubt that Defendants' marketing efforts are the product of intentional copying of the Surf Thru Intellectual Property, with the transparent goal of freeriding on and exploiting the hard-earned goodwill associated therewith.

52. Actual confusion has already occurred, and, if Defendants are permitted to continue using confusingly similar versions of the Surf Thru Intellectual Property, including

but not limited to Defendants' Infringing Marks, in commerce in connection with directly competing services, there can be no question that additional actual confusion will ensue.

53. Indeed, Defendants' use of the Defendants' Infringing Marks—which constitutes, *inter alia*, unfair competition in violation of 15 U.S.C. § 1125(a)—is certain to cause confusion, cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services. Persons including actual and prospective customers familiar with the Surf Thru Intellectual Property would be likely to mistakenly believe that Defendants' services were introduced by, under the sponsorship of, or in affiliation with Plaintiff.

54. Furthermore, Plaintiff has experienced and will continue to experience loss of control of its reputation, loss of trade, and/or loss of goodwill, as well as its actual and prospective customers, who will not be able to determine from whom they are obtaining (or meant to obtain) services.

55. Again, it is obvious from the close overlap of the Surf Thru Intellectual Property and Defendants' Infringing Marks, and the fact that Defendants have refused to cease use of confusingly similar versions of the Surf Thru Intellectual Property despite receiving a cease and desist letter from Plaintiff, that Defendants' infringing activities have been willful and wanton, and in reckless disregard of Plaintiff's exclusive intellectual property rights.

56. Plaintiff has been and will be significantly and irreparably injured unless Defendants are restrained from promoting competing services under Defendants' Infringing Marks or any other marks confusingly similar to the Surf Thru Intellectual Property. Indeed, Plaintiff is without adequate remedy at law.

57. As a result of Defendants' willful and malicious conduct, Plaintiff is also entitled to attorney's fees and expenses incurred in pursuing this action.

WHEREFORE, Plaintiff demands injunctive relief against Defendants and their affiliates including subsidiaries, parents, officers, directors, agents, owners, employees, representatives, and attorneys and all others acting under, or in concert with them or any of them, and judgment against Defendants, together with damages, interest, costs, attorney's fees, and whatever further relief this Court deems just.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

58. Plaintiff repeats and re-alleges each and every allegation of Paragraphs 1 through 30 as though fully set forth herein.

59. Plaintiff is the owner of the valid and protectable SURF THRU mark, SURF THRU EXPRESS mark, and CATCH THE WAVE mark, which are inherently distinctive and have acquired significant additional secondary meaning through Plaintiff's extensive marketing and advertising efforts and the continuous exclusive use by Plaintiff in interstate commerce since 2011.

60. Indeed, as a result of its long-term continual use in commerce in connection with carwash services, Plaintiff holds extensive common law rights in the SURF THRU mark, SURF THRU EXPRESS mark, and CATCH THE WAVE mark.

61. Members of the consuming public associate the Surf Thru Intellectual Property with a single source—that is, Plaintiff. Specifically, the Surf Thru Intellectual is associated in the minds of the public Plaintiff and its high-quality services. Plaintiff owns valuable goodwill symbolized by and embodied in its Surf Thru Intellectual Property.

62. Plaintiff's rights in its Surf Thru Intellectual Property, which it has continuously used in interstate commerce since 2011, significantly predate Defendants' first use of Defendants' Infringing Marks.

63. Charwash is Plaintiff's direct competitor and it offers the same type of services to the exact same demographic of customers in a geographic region to which Plaintiff intends to expand.

64. As discussed above, Defendants' Infringing Marks are very similar to Plaintiff's Intellectual Property in terms of sight, sound, meaning, and commercial impression. In particular, Defendants' use of "Surf-X" as a brand name overlaps directly with the first, dominant word in Plaintiff's valuable SURF THRU mark and SURF THRU EXPRESS mark, as well as the term "express" in Plaintiff's SURF THRU EXPRESS mark.

65. Given the undeniable overlap, there can be no doubt that Defendants' marketing efforts are the product of intentional copying of the Surf Thru Intellectual Property, with the transparent goal of freeriding on and exploiting the hard-earned goodwill associated therewith.

66. Actual confusion has already occurred, and, if Defendants are permitted to continue using confusingly similar versions of the Surf Thru Intellectual Property, including but not limited to Defendants' Infringing Marks, in commerce in connection with directly competing services, there can be no question that additional actual confusion will ensue.

67. Indeed, Defendants' use of the Defendants' Infringing Marks—which constitutes, *inter alia*, trademark infringement and unfair competition in violation of the common law of Pennsylvania—is certain to cause confusion, cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services. Persons including actual and prospective

customers familiar with the Surf Thru Intellectual Property would be likely to mistakenly believe that Defendants' services were introduced by, under the sponsorship of, or in affiliation with Plaintiff.

68. Furthermore, Plaintiff has experienced and will continue to experience loss of control of its reputation, loss of trade, and/or loss of goodwill, as well as its actual and prospective customers, who will not be able to determine from whom they are obtaining (or meant to obtain) services.

69. Again, it is obvious from the close overlap of the Surf Thru Intellectual Property and Defendants' Infringing Marks, and the fact that Defendants have refused to cease use of confusingly similar versions of the Surf Thru Intellectual Property despite receiving a cease and desist letter from Plaintiff, that Defendants' infringing activities have been willful and wanton, and in reckless disregard of Plaintiff's exclusive intellectual property rights.

70. Plaintiff has been and will be significantly and irreparably injured unless Defendants are restrained from promoting competing services under Defendants' Infringing Marks or any other marks confusingly similar to the Surf Thru Intellectual Property. Indeed, Plaintiff is without adequate remedy at law.

71. As a result of Defendants' willful and malicious conduct, Plaintiff is also entitled to attorney's fees and expenses incurred in pursuing this action.

WHEREFORE, Plaintiff demands injunctive relief against Defendants and their affiliates including subsidiaries, parents, officers, directors, agents, owners, employees, representatives, and attorneys and all others acting under, or in concert with them or any of them, and judgment against Defendants, together with damages, interest, costs, attorney's fees, and whatever further relief this Court deems just.

|  |  |
|---|---|
| | Respectfully submitted, |
| | **Royer Cooper Cohen Braunfeld LLC** |
| June 18, 2025 | By: _/s/ Barry L. Cohen_<br>Barry L. Cohen, Esquire<br>Julie M. Latsko, Esquire<br>Three Logan Square<br>1717 Arch Street, 47th Floor<br>Philadelphia, PA 19130<br>T: (484) 362-2628; F: (484) 362-2630<br>E: bcohen@rccblaw.com<br>E: jlatsko@rccblaw.com |
| | *Counsel for Plaintiff Surf Thru , Inc.* |

## VERIFICATION

I, Scott Howry am the Principal and Owner of Plaintiff Surf Thru, Inc., and I am authorized to make this Verification on its behalf. I have read the foregoing Verified Complaint, and I verify that, based on my knowledge, information, and belief and the information provided to me, the averments contained therein are true and correct.

I make this Verification subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

_____
Scott Howry
Principal and Owner of Surf Thru, Inc.

Date: June 17, 2025